·of the child, or person in custody—should be examined by the magistrate on the trial. It was not alleged in this return that the charge was not read to the prisoner, and her plea taken. ' The warrant annexed to the return certifies that the person in custody was duly produced for the magistrate's personal inspection, pursuant to law, and that it was proven to his satisfaction, by competent testimony and evidence, and by the confession of the said female, that the said female was guilty; and as that statement in the warrant is not disputed by the traverse, as was said in the Danziger Case, supra, "under the statute such confession is of itself sufficient to sustain the judgment rendered in the case." We think, therefore, that there was nothing to show that the magistrate did not have jurisdiction to render the judgment, and that, in the absence of such allegations in the traverse, it was the plain duty of the learned justice to remand the prisoner.

The order must be reversed, the proceedings dismissed, and the prisoner remanded to the custody of the appellant, with leave to apply for another writ of habeas corpus, accompanied by a writ of certiorari. All concur.

---

TUSCH v. GERMAN SAV. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

1. DEED OF TRUST—WHAT CONSTITUTES.
    Prior to July 20, 1896, one B. had a deposit in the defendant bank, and on that date, being ill, executed a power of attorney to plaintiff, authorizing her to draw $100 from the bank "for herself," and also $150 for funeral expenses and headstone, and to draw the balance "to be distributed equally between my brothers and two sisters in Germany." This he delivered to her with his pass book. Two or three days later he died, the plaintiff not having drawn the deposit. *Held,* that the instrument could not be sustained as a deed of trust, and passed no title to plaintiff.

2. SAME—DELIVERY OF BANK BOOK.
    Where a depositor in a savings bank delivers his pass book to a third party, in conjunction with a power of attorney purporting to define his purposes, the delivery of the book is to be considered as part of the transaction, and its object measured by the construction of the written instrument.

Appeal from appellate term.

Action by Julia H. Tusch against the German Savings Bank of the City of New York. From a judgment of the appellate court affirming a judgment of the general term affirming a judgment entered on a verdict by direction of the court, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

F. W. Holls, for appellant.
A. H. Parkhurst, for respondent.

VAN BRUNT, P. J. Upon this appeal there does not seem to be any dispute between the parties as to the evidence nor as to the rules of law applicable to the case. The contention arises solely as to

the conclusion to be drawn from the undisputed evidence. It appears that prior to the 20th of July, 1896, one Bohm had on deposit with the defendant, a savings bank, the sum of $780.38, and upon said day Bohm, being sick; wanted to dress himself and go down to the bank and draw his money. For some reason he did not do so, and the doctor brought to him an attorney, who drew a paper as follows:

"Know all men by these presents, that I, Edwin Godlib Bohm, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Julia H. Tusch my true and lawful attorney for me and in my name, place, and stead to draw one hundred dollars from the bank for herself, also one hundred and fifty dollars for funeral expenses and the purchase of a headstone, and to give my friend William Tusch, after my death, my carpenter tools, and also to draw the balance of all moneys in bank belonging to me, and to be distributed equally between my brother and two sisters in Germany; also to draw what money there is coming to me from the United States Savings and Loan Bank, and to give it to my friend William Tusch, giving and granting unto the said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that the said attorney or her substitute shall lawfully do or cause to be done by virtue hereof. In witness whereof I have hereunto set my hand and seal the twentieth day of July, in the year one thousand eight hundred and ninety-six.          Edwin Godlib Bohm. [L. S.]

"Sealed and delivered in the presence of
    "Agnes P. McGonigle.
    "[Duly acknowledged.]"

This was executed by Bohm, and delivered by him, together with the pass book of the bank, to the plaintiff. In two or three days Bohm died, the plaintiff not having drawn the deposit from the bank. This action was thereupon brought against the bank to recover the same. In the court below it was held that the instrument in question could be treated as a trust deed passing the title immediately to the plaintiff.

Upon an examination of the instrument in question, we have failed to find any words conveying a present title to any portion of the deposit to the plaintiff. It is clear that the instrument created the plaintiff an attorney of the defendant, and she remained such attorney until his death. It is true that Bohm says that he creates her his true and lawful attorney to draw $100 for herself, and also $150 for funeral expenses and the purchase of a headstone, etc. While the plaintiff may have had authority under this power of attorney, to appropriate to herself the $100 if she had drawn the money, there was no intention disclosed by the instrument that the plaintiff was to have any ownership of any portion of the deposit, certainly until it had been drawn from the bank. It remained the property of the deceased, and there are no words whatever in the instrument itself which are apt to convey any title to any portion of the deposit. The whole nature of the instrument is testamentary. It is a provision for funeral expenses and the purchasing of a headstone and for the delivery of certain property after his death, and the right to draw the balance of the money seems also to have been qualified by the words "after my death." The balance was to be drawn for the purpose of

distribution among those persons whom he desired to remember after death. No grant or conveyance or present words of gift are to be found in the instrument, and yet it has been held to be a deed of trust conveying a present title. Of the intention of the executor of this instrument we can only judge from the instrument itself, and from the circumstances which surrounded him at the time of its execution, and, where we do not find in the instrument itself any words of grant or gift, the circumstances under which it was executed do not authorize a construction that it was intended as a deed. If it is to be construed as being anything other than what its words import,—namely, a power of attorney,—it must be held to be an instrument of a testamentary nature, and that the person who executed the same used this means to dispose of his property after death.

But it is urged, in support of the view that there was an intention upon the part of the deceased to pass a present title to the deposit, that such intention was evidenced by the delivery of the bank book. The bank book and the instrument under consideration were delivered together, and, whatever may have been the construction to be placed upon the act of the delivery of the bank book alone, when it was delivered in conjunction with an instrument which purported to define the purposes of the executor of the instrument and the deliverer of the bank book, the delivery of the bank book must be construed as part of the transaction, and its object measured by the construction of the written instrument. There being, therefore, no intention immediately to pass title to this deposit, there was no trust created, and whatever validity there may have been to the instrument during the life of the executor ended with his death.

The judgment appealed from and the judgment of the general term of the city court and the judgment of the city court should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.